JONAS EDWARDS & SON

*vs.*

JAMES H. PINKHAM.

Androscoggin.    Opinion January 18, 1915.

*Assignment.    Assumpsit.    Confession and Avoidance.    Contract.    Liability.*
*Mortgage.    Possession.    Rules of Construction.*

This case depends upon the construction of the following instrument, which is in effect a contract;

"Mr. James Pinkham, Winthrop, Me. Dear Sir: As assignee of Charles Davis we herewith advise you that during the time the six horses on which we have a claim are working on the Davis operation, we shall hold you responsible for the earnings of said horses for not less than thirty-five dollars each month from January 17, 1913 to April 17, 1913, (per team) and with the understanding we put you in absolute control of said teams as our agent.

J. L. PEARSON.        JONAS EDWARDS.

The plaintiff contends that under this instrument, the defendant is personally liable for the use of the horses; the defendant, that he is liable only as assignee.

*Held:*

1.   That as matter of law, it cannot be contended that the words "as assignee" at the beginning of the agreement exempts the defendant from personal liability.

2.   The intention of the parties and the meaning of this instrument is to be discovered by the application of the well known rules of construction, which take into consideration the subject matter of the agreement, motive for procuring it, the probabilities as to conflicting contentions and all other circumstances which may throw light upon the transaction.

3.   With regard to the subject matter of the contract, the situation of the parties, the purpose to be obtained and the motives for procuring it, the evidence clearly preponderates in favor of the contention of the plaintiffs regarding the construction of the written instrument.

On report.   Judgment for the plaintiff for $180.53 and interest from date of writ.

This is an action of assumpsit on an account annexed to recover of defendant the sum of $315.00 for the use of three teams from January 17, 1913, to April 17, 1913, at $35.00 per month for each team. The plea was the general issue. At the conclusion of the evidence, the case was, by agreement of the parties, reported to the Law Court for determination, upon such evidence as is legally admissible.

The case is stated in the opinion.

*Tascus Atwood,* for plaintiffs.

*Frank E. Morey,* and *H. E. Foster,* for defendant.

SITTING: SPEAR, CORNISH, KING, BIRD, HANSON, JJ.

SPEAR, J.   This is an action of assumpsit on the following account annexed: "James H. Pinkham to Jonas Edwards & Son to use of three teams of horses, and harnesses with same, at $35.00 per month per team, from Jan'y 17, 1913 to April 17, 1913—$315.00."

The plea was the general issue. The defense goes to the liability and not to the amount claimed. The case turns upon the construction of the following instrument: "Mr. James Pinkham, Winthrop, Me. . Dear Sir: As assignee of Charles Davis we herewith advise you that during the time the six horses on which we have a claim are working on the Davis operation we shall hold you responsible for the earnings of said horses for not less than thirty-five dollars each month from January 17, 1913 (per team) and with the understanding we put you in absolute control of said teams as our agent.

J. L. PEARSON.          JONAS EDWARDS."

The contention of the plaintiff is that under this instrument the defendant is personally liable for the use of the horses; the contention of the defendant that he is liable only as assignee.

As a matter of law it cannot be contended that the words "as assignee" at the beginning of the agreement exempts the defendant from personal liability. *Hull* v. *Sturdivant et al.,* 59 Maine, 172; *Ross* v. *Brown,* 74 Maine, 352; *Mellen* v. *Moore,* 68 Maine, 390. Accordingly, this instrument is a contract, uncertain in meaning, from which is to be discovered the intention of the parties, by the application of the well known rules of construction, which take into consideration the subject matter of the agreement, the situation of the

parties, the purpose to be attained, the motive for procuring it, the probabilities as to conflicting contentions, and all other circumstances throwing light upon the transaction.

Bearing in mind these rules of interpretation the report shows the following facts: During the summer and fall of 1912 the plaintiffs sold to Charles H. Davis these teams for the respective sums of $650.00, $325.00, and $620.00 for which three promissory notes were given payable $50.00 each month on each note, the title of each team to remain in the seller until the respective notes were fully paid. Additional security was taken, but this fact is not material to the issue. Davis purchased these teams for the purpose of engaging in a lumber operation at a place called Mosquito in or about the Forks Plantation. Davis undertook the operation and proceeded until the 17th day of January, 1913, when, having failed in his project, he made a common law assignment to James H. Pinkham, the defendant. To this assignment the plaintiffs did not become parties. The avowed purpose of the assignment was to authorize and enable the defendant to complete the operation, which Davis had begun. To do this it was necessary that he should have control and use of the three teams which the plaintiffs had sold to Davis. But the evidence discloses that some kind of friction had arisen between Davis and Pinkham which disturbed Pinkham's prospects in getting control of the teams through Davis. Davis having failed to pay according to the tenor of his notes, Pinkham was aware that the plaintiffs had a legal right at any time to the control of the teams then in possession of Davis.

When Davis had failed in the success of his operation, it is manifest that Pinkham had interest enough of some kind in the affair to induce him to investigate the matter, and take a common law assignment of the operation, and of all the property, estates, rights and credits and choses in action belonging to Davis, together with debts, books of account and all other written instruments relating to the above property, with the view "to continue and carry on the business of the said Davis."

At this juncture, when Pinkham had both an interest and a desire to prosecute the business, and apprehension about getting control of the horses, he went to the plaintiffs for the express purpose of obtaining the use of these teams to carry on the operation, as expressed by himself in the following language: "I told Mr. Edwards that I

thought Mr. Davis and I were going to have a little trouble. Mr. Davis was discouraged and wanted to take his horses out and go to Manchester; and I was afraid I could not get the money out of the lumber if he took the horses out; and I told Mr. Day that I should get a paper to show Mr. Edwards so I could have possession." This testimony is in exact accord with the plaintiff's contention, as shown by the testimony of Jonas Edwards, as follows: "Q. And what was the occasion of your giving him the writing that was given him and has been identified here? A. He said he was having some trouble with Davis and wanted something to show that he had possession of the horses." This is the undisputed attitude of the defendant towards this transaction. On the other hand, the plaintiffs had these three teams in the woods in a hazardous occupation, holding an agreement that they should receive a payment of $50.00 each month on each team with the right in default of payment to take possession of the teams. Neither did the plaintiffs have any interest in the operation or in the assignment to Pinkham, except the indirect interest which might arise from the fact that Davis was a creditor of the bank in which Jonas Edwards was a director. This is the undisputed attitude of the plaintiffs towards this transaction. Up to this date, February 14, when the agreement was made, there was no controversy as to these facts. With regard to the subject matter of the contract, the situation of the parties, the purpose to be obtained, or the motive for procuring it, we think the evidence clearly preponderates in favor of the contention of the plaintiffs regarding the construction of the written instrument.

This conclusion is also confirmed by the probabilities and other circumstances in the case. It appears that the plaintiffs were entitled to a payment of $50.00 per month upon their notes whether the teams were employed by Davis, or by Pinkham as assignee. We are unable to discover any motive or any reason based upon business principles which would induce the plaintiffs to reduce a claim of $50.00 a month to one of $35.00 a month, if they were to look to the same source, for the payment of the smaller sum, with which they had a written contract, for the payment of the larger sum. If Pinkham had taken a writing for the purpose for which he says alone he desired it,—for the control only of the horses,—there would have been no occasion for any change in the amount of the payment and he would still have been obliged to pay from some source in order

to continue in control of the teams—$50.00 per month on each team, as specified in the notes. Now it looks reasonable, under these circumstances, that this change from $50.00 per month payable from the operation was reduced to $35.00 per month because it was to be paid by Pinkham, personally, and as a favor to him. There was certainly no visible reason why the plaintiffs should voluntarily make the reduction to their own disadvantage. There was some reason why this original contract was changed from $50.00 a month to $35.00 a month. What was it? Furthermore, it is unreasonable to suppose that the plaintiffs would allow their teams to continue all winter in a hazardous and admittedly depreciative service, in the employ of a defunct business, carried on by an assignee, as the only source to which they were to look for sufficient monthly payments to meet the use, depreciation, and possible injury to their teams.

Without some guarantee, this was the time when a prudent man, who had the right, would have taken his teams back rather than trust to such a source for monthly compensation. For it was now evident when the operation was over that the teams would come back, as Davis could not pay. If, then, the plaintiffs thought they were looking to a bankrupt business for their monthly pay, is it reasonable to suppose that they would not have demanded the $35.00 of the assignee, as it became due, rather than let the teams work all winter without pay, and take back what was left of them in the spring? Such conduct was perfectly consistent with the plaintiffs' contention, that they looked to Pinkham for $35.00 per month, whom they regarded perfectly responsible. And Pinkham gives no reason why he would have hesitated to make the agreement as the plaintiffs claimed it, but on the other hand gives ample reason why, at the time the agreement was made, he would not have hesitated to do it. When asked, when he read the contract and discovered "that this paper recited you were to pay $35.00 per month for the use of the teams," why he did not write back and say there was some mistake, he makes this significant answer in the nature of a confession and avoidance: "This is why, at that time when Mr. Edwards gave me that paper, I thought,—as Mr. Davis thought,— there would be plenty of money to pay the mortgage, when the operation was finished in the spring."

Jonas Edwards and Pearson say that it was expressly understood with Pinkham, in conversation with him in regard to the matter, that

he was personally to pay $35.00 per month for the use of these teams. He denies that he made any such conversation. These two witnesses, so far as the case shows, are each as reputable, and their testimony entitled to as much weight, as that of the defendant. If this be so, upon the testimony of these witnesses, unsupported by any outside influences, the plaintiffs must be regarded to have sustained the burden of proof. But when corroborated, as we have endeavored to show, by all the probabilities and every circumstance, they seem most clearly to have prevailed.

But the writing, itself, if construed without reference to any other evidence at all, is clearly in favor of the plaintiffs' contention as to the personal liability of the defendant. It clearly says: "We shall hold you responsible for the earnings of said horses for not less than $35.00 each month from January 17, 1913 (per month) and with this understanding we put you in absolute control of said teams as our agent." No language could be plainer; and the control of these teams is given practically upon the condition that the defendant understood that he was to pay $35.00 a month, as the language, "and with this understanding we put you in absolute control,". etc., indicates. But it is said that this agreement is controlled in its clear expression "we shall hold you responsible" by the words "as assignee" at the beginning. It has already been shown that the words "as assignee" have no binding legal effect upon the contract. We think it as clearly appears that the words as here used were employed as they very naturally would be to express the relation which the defendant bore to Davis and to enable the defendant to show to Davis through the writing his right as assignee to demand the teams. The contract was written at the express instance of the defendant, for the express purpose of showing it to Davis, to enable him to get control of the teams. In other words, as here used, in connection with all the facts and circumstances before mentioned, the words should be regarded as merely *descriptio personae* as has been held in scores of cases found all through the books. As to the use of the words at the end of the contract "as our agent" we hardly think the claim of the defendant that he was acting as agent of the plaintiffs in the use of these horses, can be regarded with serious consideration. We are accordingly of the opinion that the plaintiffs have sustained the burden of proof.

The report shows that more or less testimony was taken out touching the disposal of the horses after the winter's work, and what prices were obtained for them; but we are unable to discover that these issues concern the case at bar, which involves only the interpretation of the contract before us.

*Judgment for plaintiffs for $180.53*
*and interest from date of writ.*